No. 21-30739

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

GENE RUDOLPH,
*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CR-87-1

---

**BRIEF FOR APPELLANT**

---

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

CELIA C. RHOADS
Assistant Federal Public Defender

Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Celia_Rhoads@fd.org

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Gene Rudolph*
No. 21-30739

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. *Defendant-Appellant:* Gene Rudolph.

2. *Counsel for Defendant-Appellant*: Assistant Federal Public Defender Celia C. Rhoads.

3. *Former Counsel for Defendant-Appellant*: Former Assistant Federal Public Defender Gary V. Schwabe and Townsend Myers, Esq.

4. *Counsel for Plaintiff-Appellee*: United States Attorney Duane A. Evans and Assistant United States Attorneys Maurice Edwin Landrieu, Kevin G. Boitmann, and Diane Hollenshead Copes.

5. *Former Counsel for Plaintiff-Appellee*: Assistant United States Attorneys Alexandra Triana Giavotella and Brandon Long and former Assistant United States Attorney Michael Redmann.

s/Celia Rhoads
CELIA C. RHOADS
Assistant Federal Public Defender
Dated: July 15, 2021

## REQUEST FOR ORAL ARGUMENT

Appellant Gene Rudolph respectfully requests oral argument. Oral argument would aid in this Court's resolution of this appeal, which raises legally and factually complex questions about application of the Sentencing Guidelines' career-offender enhancement. In this case, that enhancement resulted in an exceptionally harsh 22-year term of imprisonment—nearly 8 years higher than what Mr. Rudolph's sentence would have been, absent the various errors below.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

REQUEST FOR ORAL ARGUMENT .................................................... iii

TABLE OF CONTENTS .......................................................................iv

TABLE OF AUTHORITIES ................................................................. 1

STATEMENT OF JURISDICTION .......................................................3

STATEMENT OF THE ISSUES ............................................................4

STATEMENT OF THE CASE ...............................................................5

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT ........................................................................................15

    I.    A preponderance of reliable evidence did not show that Mr. Rudolph's 1996 cocaine conviction caused him to serve any term of imprisonment within 15 years of the instant offense. ......................................................................15

    II.    Mr. Rudolph's instant conviction does not qualify as a "controlled substance offense" within the meaning of § 4B1.1. ................................................................................30

    III.    This Court should remand to the district court for resentencing and to address various unresolved objections. ....................................................................39

CONCLUSION ....................................................................................45

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Glover v. United States,* 531 U.S. 198 (2001) ..........................................38

*Johnson v. United States,* 520 U.S. 461 (1997) ................................31, 36

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ...........................................passim

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ..................37, 38

*Puckett v. United States*, 556 U.S. 129 (2009)........................................31

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ......................38

*Stinson v. United States*, 508 U.S. 36 (1993)...................................32, 34

*Tabb v. United States*, 141 S. Ct. 2793 (2021)........................................35

*United States v. Andrade-Aguilar*, 570 F.3d 213 (5th Cir. 2009)...........29

*United States v. Bryant*, 571 F.3d 147 (1st Cir. 2009) ............................28

*United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022).......................32

*United States v. Castelo-Palma*, 30 F.4th 284 (5th Cir. 2022) ..............40

*United States v. Conner*, 537 F.3d 480 (5th Cir. 2008) ..........................25

*United States v. Covington*, 133 F.3d 639 (8th Cir. 1998) ..........27, 28, 29

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004).......................37

*United States v. Goodin*, 835 F. App'x 771 (5th Cir. 2021)....................35

*United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) ...........................32

*United States v. Herrera-Solorzano*, 114 F.3d 48 (5th Cir. 1997) ....26, 29

*United States v. Hill,* 53 F.3d 1151 (10th Cir. 1995) ..............................18

*United States v. Jenkins,* 854 F.3d 181 (2d Cir. 2017)...........................38

*United States v. Kelly*, 422 F.3d 889 (9th Cir. 2005)...............................18

*United States v. Kirk,* 894 F.2d 1162 (10th Cir. 1990)............................18

*United States v. Lawrence,* 47 F.3d 1559 (11th Cir. 1995) ....................18

*United States v. Lightbourn*, 115 F.3d 291 (5th Cir. 1997) .............34, 35

*United States v. Lora-Andres*, 844 F.3d 781 (8th Cir. 2016) ..................42

*United States v. Marks*, 864 F.3d 575 (7th Cir. 2017) ............................28

*United States v. McNeil*, 573 F.3d 479 (7th Cir. 2009) ...........................28

*United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021)..........................32, 35

*United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005).............................29

*United States v. Roberts*, 39 F.3d 10 (1st Cir. 1994) ........................24, 33

*United States v. Rodriguez*, 523 F.3d 519 (5th Cir. 2008) ......................17

*United States v. Salamanca-Rosas*, 342 F. App'x 38 (5th Cir. 2009)....16, 17

*United States v. Sanchez*, 2000 WL 1234344 (6th Cir. 2000)...........18, 29

*United States v. Vargas*, 35 F.4th 936 (5th Cir. 2022).......... 33, 34, 35, 36

*United States v. Vasquez-Balandran*, 76 F.3d 648 (5th Cir. 1996) ........ 16

*United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018).................... 32

## Other Authorities

U.S.S.G. § 2D1.1 ................................................................................ 5

U.S.S.G. § 2D1.2 ................................................................................ 5

U.S.S.G. § 3B1.1 ........................................................................... 5, 42

U.S.S.G. § 4A1.1 ............................................................................. 16

U.S.S.G. § 4A1.2 .................................................................. 6, 17, 23

U.S.S.G. § 4B1.2 ......................................................... 6, 16, 31, 32

U.S.S.G. § 6A1.3 ...................................................................... 18, 25

## STATEMENT OF JURISDICTION

This appeal is from the final judgment in a criminal case. The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Final judgment was entered on December 1, 2021, and Appellant timely filed a notice of appeal on December 2, 2021. ROA.138, 145.

## STATEMENT OF THE ISSUES

(1)    Whether the government produced sufficiently reliable and complete information to prove that Mr. Rudolph's 1996 conviction for cocaine distribution—for which he received a 5-year sentence—resulted in him being incarcerated within 15 years of the instant offense, such that it could qualify for criminal history points under the Sentencing Guidelines and serve as the basis for the career offender enhancement.

(2)    Whether conspiracy offenses qualify as "controlled substance offenses" for purposes of the career offender Sentencing Guideline.

## STATEMENT OF THE CASE

On May 9, 2019, Appellant Gene Rudolph was charged in a single count of a multi-count and multi-defendant indictment with conspiracy to distribute five kilograms or more of cocaine hydrochloride and 280 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(2) and 841(b)(1)(A). ROA.10. He pleaded guilty to that charge (Count 1) on July 7, 2021, without the benefit of a plea agreement. *See* ROA.94 (minute entry).

Prior to sentencing, a U.S. Probation officer authored a Pre-Sentence Report (PSR) calculating Mr. Rudolph's advisory range under the Sentencing Guidelines. *See* ROA.218. The PSR gave rise to numerous objections to the probation officer's Guidelines determinations, including the applicable drug quantity under U.S.S.G. § 2D1.1, its application of a four-point aggravating role enhancement under § 3B1.1, and its application of an enhancement for possessing firearms in connection with the offense under § 2D1.2(b)(1). *See* ROA.230, 242-65. Those many objections were rendered moot, however, because the probation officer also claimed that Mr. Rudolph qualified as a career offender under § 4B1.1(a).

The career offender Guideline is a sentencing enhancement that applies to defendants convicted of controlled substance offenses or crimes of violence who also have at least two *prior* convictions for either controlled substance offenses or crimes of violence. To qualify here, the instant offense of conviction had to fall within the Guideline's definition of "controlled substance offense." *See* § 4B1.1(A)(2) & comment. (n.1); § 4B1.2(b). And, moreover, the predicate prior convictions had to satisfy numerous requirements. *See* § 4B1.2(c). Among those requirements, the predicate prior convictions could not be too stale, meaning, the convictions had to have occurred, or some part of the sentence served, within fifteen years of the commencement of the instant offense. *See* § 4A1.2(e)(1); § 4B1.2(c). If the career offender Guideline's various requirements are met, § 4B1.1 automatically raises a defendant's criminal history category to the maximum of VI and sets a typically higher base offense level than would otherwise apply. *See* § 4B1.1(b). Here, it raised Mr. Rudolph's offense level to 37.

The probation officer based the career-offender determination on the officer's finding that Mr. Rudolph's instant offense of conviction—a narcotics conspiracy—was a qualifying controlled substance offense. As

for the prior convictions, the probation officer determined that Mr. Rudolph had two qualifying predicates: (1) a 1996 cocaine conviction for which he received a 5-year sentence; and (2) a 2004 cocaine conviction for which he received a 7-year sentence. ROA.230-32. The commencement of the instant offense was 2018. *See* ROA.223. Thus, under normal circumstances, the 1996 conviction would be far too old to qualify. Indeed, the conviction itself occurred 22 years before the instant offense of conviction, with the sentence extending only five years after that. Nonetheless, the probation officer claimed in the PSR—without citing a specific source of the information—that Mr. Rudolph's *parole* for that conviction was revoked in 2004 and then again in 2011, "according to court records." ROA.232. Based on those bare claims, U.S. Probation insisted that the offense fell within the relevant 15-year period and thus qualified as a proper career offender predicate. As a result, the probation officer calculated a Guidelines range of 262 to 327 months—nearly 8 years higher than it would have been had that 22-year-old conviction been excluded for being too remote in time. ROA.237.

Mr. Rudolph adamantly objected to application of the career offender enhancement and assessment of criminal history points for the

1996 conviction, specifically challenging veracity of the parole revocation claim. ROA.157-60. As counsel pointed out, the bare information contained in the PSR simply did not seem to make sense. The first claimed "parole revocation" for the 1996 conviction allegedly occurred a full four years *after* the expiration of his full-term sentence for the conviction. ROA.158; *see also* La. Stat. Ann. § 15:574.6 ("The parole term, when the committee orders an offender released on parole, shall be for the remainder of the offender's sentence[.]"). As the PSR itself reflected, Mr. Rudolph was sentenced on July 15, 1996, to a five-year sentence for the conviction, with credit for time served since his March 8, 1996, arrest. ROA.232. The PSR indicated that he was released to parole on September 12, 2000—over four years after his arrest and the sentence was imposed. ROA.232. Thus, the full-term sentence for his conviction would appear to have expired on March 8, 2001 (or, at the latest, July 15, 2001)—well before the 2004 date the probation officer claimed parole was revoked.

Interestingly, an exact copy of that same parole "revocation" information was appended to an even older conviction: a 1991 manslaughter offense. ROA.231. Like the 1996 conviction, the PSR cited no specific source of that information either, referring generically

Louisiana Department of Probation and Parole "records." ROA.231. And, for both the 1991 and 1996 offenses, the PSR did not indicate the *sentence* imposed (if any) upon any alleged revocation of parole, only the dates that Mr. Rudolph went in and out of prison. Thus, even crediting the claim that parole for both convictions was in fact revoked and that Mr. Rudolph was imprisoned thereafter, it was impossible to know whether his imprisonment was actually based on sentences imposed for the parole violations, and, if so, for which one. In fact, those alleged revocations almost immediately followed a *new* conviction for a separate offense: the 2004 cocaine conviction, for which Mr. Rudolph received a 7-year sentence. ROA.232. Thus, although Mr. Rudolph was in fact imprisoned at various times during the 15 years leading up to the instant offense, the PSR did not provide information showing that those periods of incarceration were actually a result of the 1991 or 1996 convictions.

Tellingly, the government did not disagree with defense counsel's analysis of the parole issue or dispute that there were facial problems with the probation officer's claims. *See* ROA.160. Nor did the government produce any documentation—i.e., court documents or proof of the revocation proceedings—to support the bare, incomplete information

contained in the PSR, which Mr. Rudolph (with reasonable basis) disputed. Nonetheless, the government urged the district court to reject the objection based on the bare, questionable claims in the PRS alone and asked the court to simply "assum[e]," without evidence, what documents the probation officer *probably* used to come up with those claims:

> This case is, again, no different from any other case when we're looking at the person's criminal record. We look at the court documents and certified copies of convictions and the rap sheets and get that information from numerous sources. And we relied on that information—I'm assuming that probation has as well—to determine if the defendant is, in fact, a career offender.

ROA.160. Without elaborating or providing any additional information, the government then pivoted, arguing that the issue did not really matter anyway, telling the district court: "To some extent, we're trying to rearrange the chairs on the Titanic here. I'm looking at it. As a career offender, he's at 37. But even without a career offender, he's at a 36." ROA.160.[1]

For its part, the district court appeared confused about which party

---

[1] The government's suggestion that the enhancement did not matter was misleading. Had the district court sustained Mr. Rudolph's objection to the PSR assessing points for the 1996 conviction, Mr. Rudolph's criminal history would have dropped to a category IV and his base offense level to (at most) 33, resulting in a Guidelines range of 168-210 months, i.e., nearly 8 years lower than the career-offender range. Moreover, removing the career offender enhancement would have rendered relevant counsel's multiple *other* objections to errors in the PSR which, properly addressed, would have reduced Mr. Rudolph's Guidelines range even further.

bore the burden of proof for the enhancement and what that proof must entail, saying: "Mr. Myers, do you have any proof that he *wasn't*? The question I have is: Who's got the burden at this point?" *See* ROA.159 (emphasis added)). The district court did not ask the government to produce documentation showing that Mr. Rudolph *was* on parole, despite agreeing that the PSR's claims were "peculiar." ROA.161. Ultimately, although suggesting that it found the PSR's claimed circumstances about the 1996 conviction questionable, the court nonetheless chose to faithfully adhere to those unsupported allegations since those conclusory claims were the only information provided:

> I have looked at this, and I found it peculiar as well. But I am going to base it upon the record that I have before me which is that he was, indeed, on parole, he was revoked, and I think the guidelines are clear that as long as that's within the 15 years, that would create the career offender status.

ROA.161.

With the exception of one factual issue, the district court did not specifically address any of the defense's other objections to the PSR's calculations or resolve any of the many factual disputes, which, by that time, were moot anyway due to the court sustaining the career-offender enhancement. ROA.162.

The court sentenced Mr. Rudolph to a term of 262 months of imprisonment, the bottom of the career offender Guideline range. ROA.169. Mr. Rudolph timely appealed. ROA.138, 145.

## SUMMARY OF THE ARGUMENT

The district court's career-offender determination must be reversed for two, independent reasons.

First, the district court legally erred when is misappreciated the applicable evidentiary burden, missed the necessity of obtaining reliable information to prove a sentencing enhancement, and overlooked the fact that it was missing information necessary to come to a conclusion on the parole revocation issue. In doing so, the court committed reversible error by finding that the government had proved by a preponderance of sufficiently reliable evidence that Mr. Rudolph's 1996 cocaine conviction resulted in his imprisonment within the 15-year period leading up to the instant offense and therefore qualified as a proper career-offender predicate. Indeed, as the district court itself acknowledge, the bare, unsupported information contained in the PSR appeared illogical on its face and incomplete. Moreover, in response to the defendant's specific and well-founded objection to the veracity of that information, the government did not even attempt to show otherwise.

Second, Mr. Rudolph's offense of conviction does not qualify as a "controlled substance offense" within the meaning of the Guidelines,

because conspiracies are not included within the definition of that term. The Application Note stating that conspiracies *do* qualify is invalid under Supreme Court precedent holding that agency guidance that expands rather than interprets a Guideline's unambiguous text deserves no deference. Although this Court had not reached this issue at the time of Mr. Rudolph's sentencing, and it recently was deemed foreclosed by past present, this Court has indicated eagerness to revisit the issue, and there currently is pending a petition for rehearing en banc that would definitely resolve this question.

Either of those errors independently mandates reversal of the career-offender determination and vacatur of Mr. Rudolph's sentence. This Court should not reach the remaining factual and legal disputes that were raised below but rendered moot by the career-offender enhancement. The district court did not address the necessary factual and legal questions relevant to those issues below and should be given an opportunity to do so in the first instance. However, Mr. Rudolph raises those issues here out of an abundance of caution, in the event this Court wishes to reach them now.

# ARGUMENT

An individual qualifies as a "career offender" under the Guidelines if (1) he or she was at least 18 years old at the time of the instant offense, (2) the offense of conviction is a felony that is either a "crime of violence" or a "controlled substance offense," and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. § 4B1.1(a). There is no question that Mr. Rudolph was 18 at the time of the instant offense and, therefore, that the first requirement was met. However, the latter two requirements were not satisfied in this case. Either of those two errors independently mandates reversal of the district court's career offender determination.

## I.    A preponderance of reliable evidence did not show that Mr. Rudolph's 1996 cocaine conviction caused him to serve any term of imprisonment within 15 years of the instant offense.

First, the district court erred by applying the career offender enhancement based on Mr. Rudolph's 1996 cocaine conviction and assessment of criminal history points for that offense. That legal error consisted of misapplying the burden for proving the necessary elements of the enhancement and misunderstanding the information needed to make a conclusive and reliable determination. As defense counsel urged

below, the government failed to prove that Mr. Rudolph's exceptionally remote 1996 cocaine conviction could be counted for criminal history purposes and serve as a basis for the career offender enhancement. This error is preserved and therefore subject to de novo review. *See* ROA.157-60.[2]

For a defendant to qualify as a career offender, he must have two prior convictions for controlled substance offenses or crimes of violence that "are counted separately under the provisions of § 4A1.1(a), (b), or (c)." *See* § 4B1.2(c)(2); *see also* § 4A1.1 comment. (n.1); § 4A1.2(e). That means—like any prior conviction receiving criminal history points under Chapter 4—a career-offender predicate cannot be *too old*, i.e., outside the time limits set forth in § 4A1.2(d) and (e). Thus, to qualify as proper career-offender predicates, the government must show that the two prior convictions each "resulted in the defendant being incarcerated during any part of [the] fifteen-year period" ending when the defendant's instant offense commenced. § 4A1.2(e)(1); § 4B1.2, comment. (n.4).

---

[2] *See, e.g.*, *United States v. Vasquez-Balandran*, 76 F.3d 648, 649 (5th Cir. 1996) ("Whether the sentencing guidelines apply to a prior conviction is a question of law. We review questions of law *de novo*." (internal citation omitted)); *see also United States v. Salamanca-Rosas*, 342 F. App'x 38, 39 (5th Cir. 2009) (unpublished) ("A district court's determination that a particular prior conviction is usable in calculating a criminal history score is a legal question." (citing *Cisneros-Gutierrez,* 517 F.3d at 764)).

If the government cannot show that the defendant served any part of a conviction's sentence during the 15 years preceding the instant offense, it is too old and cannot be counted for career-offender or criminal history purposes. However, if the government can prove that the sentence served on a stale conviction spilled into the applicable 15-year time period, it counts. Relevant here, § 4A1.2(e)(1) and (k)(2) may result in the counting of an otherwise stale conviction if—although the defendant was released from his sentence prior to the 15-year cutoff—the term of *parole* for that offense was revoked and the defendant was sentenced to a new term of imprisonment that caused him to be incarcerated for that conviction during the 15-year period. *See* § 4A1.2(e)(1), (k)(2).

Importantly, the government "bears the burden of proving *by a preponderance of the relevant and reliable evidence* the facts supporting a sentencing enhancement, including prior convictions." *Salamanca-Rosas*, 342 F. App'x at 9 (emphasis added); *accord United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008). "The preponderance of the evidence standard, while certainly less demanding than the 'reasonable doubt' or 'clear and convincing' standards, 'is not toothless," and "[i]t is the district court's duty to ensure that the Government carries this

burden by presenting reliable and specific evidence.'" *United States v. Sanchez*, 2000 WL 1234344 (6th Cir. 2000) (quoting *United States v. Lawrence,* 47 F.3d 1559, 1566 (11th Cir. 1995)). Thus, "there must be an acceptable evidential basis for the court's factfindings at the sentencing hearing" with respect to relevant prior convictions and their necessary details, such as how and when related sentences were served. *United States v. Floyd,* 343 F.3d 363, 372 (5th Cir. 2003); *see also id.* at 373-74 ("The district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3(a)).[3]

Here, the probation officer claimed that Mr. Rudolph qualified as a career offender under § 4B1.1(a) based in part on a 22-year-old controlled substance offense: a July 15, 1996, conviction for possession with intent to distribute cocaine, for which Mr. Rudolph received a 5-year term of

---

[3] *See also United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005) ("[T]he government has the burden to establish clearly and unequivocally the conviction was based on all of the elements of a qualifying predicate offense." (internal quotation marks and citation omitted)); *United States v. Hill,* 53 F.3d 1151, 1153 (10th Cir. 1995) (en banc) ("The government must prove a sentence enhancement by the preponderance of the evidence."); *United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir. 1990) ("The government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases.").

imprisonment. ROA.232. The instant offense commenced in 2018. *See* ROA.223. Accordingly, the government (i.e., the party advocating for the enhancement in this case) was required to prove by a preponderance of sufficiently reliable evidence that Mr. Rudolph either committed or was still serving some part of his 1996 sentence on or after 2003, i.e., fifteen years prior to the commencement of the instant offense. Mr. Rudolph adamantly argued he served no part of his 1996 sentence within the applicable time period. *See* ROA.157-60. He also pointed out apparent facial inaccuracies in the unsupported claims provided by the probation office, which he noted did not add up and appeared, in fact, to be illogical. At the very least, counsel's well-founded arguments called the reliability of that unsourced information into question.

The probation officer claimed in the PSR—and then maintained after the submission of written objections—that the conviction counted because Mr. Rudolph's term of parole for the offense was revoked during the applicable 15-year time period, even if the sentence itself was imposed 22 years before the instant offense began. According to the probation officer, Mr. Rudolph was released to parole for the 1996 conviction in September 2000, four years after he was sentenced.

ROA.232. The probation officer claimed that Mr. Rudolph's parole then was revoked four years later in August 2004. ROA.232. The probation officer provided no information or documentation indicating what sentence he received for that alleged revocation, but claimed that he remained in jail until November 2006. ROA.232. The probation officer also claimed that parole for the 1996 conviction was revoked again in February 2011, leading to five more years of incarceration. ROA.232. Again, the probation officer did not indicate what sentence Mr. Rudolph received, including just the date ranges of his incarceration. ROA.232.

Accordingly, based on the information in the PSR, Mr. Rudolph's term of parole for the 1996 conviction did not end until July 2013—17 years after the sentence was initially imposed. All told, the probation officer claimed that Mr. Rudolph served over 8 years of incarceration and spent approximately 9 additional years on parole for the offense—despite having received only a 5-year sentence in 1996. In neither the PSR itself nor in its response to Mr. Rudolph's objection did the probation officer provide any documentation for these claims. *See* ROA.230, 247-48. Nor did the probation officer provide information to show what sentences of imprisonment (if any) Mr. Rudolph received at any time during these

alleged parole revocations.

A carbon copy of that same parole revocation information—with identical dates of revocation and incarceration—was *also* appended verbatim to the PSR's description of the *separate* 1991 manslaughter conviction. ROA.231. In other words, the probation officer claimed that parole was revoked simultaneously (and repeatedly) for Mr. Rudolph's two parole terms at once. No documentation supporting those claims was provided either. *See* ROA.229, 248.

Moreover, like the 1996 conviction, no information about the *sentence* (if any) imposed upon revocation was provided. That created a compounding issue: even if the apparently expired parole term for the 1996 conviction *had* been revoked in 2004, it was impossible to know, based on the skeletal information provided in the PSR, whether Mr. Rudolph's alleged imprisonment from 2004 to 2006 resulted from that particular revocation. Indeed, since (according to the PSR), *both* terms were revoked, it would appear that his sentence of imprisonment just as easily could have flowed from revocation of the 1991 conviction's parole term instead. Moreover, Mr. Rudolph's incarceration during that period definitely *did* arise from the 2004 cocaine conviction and 7-year

21

sentence imposed 3 days prior to the alleged parole revocation—the prior, qualifying conviction and sentence that Mr. Rudolph did not dispute. ROA.232. Thus, the fact that he was incarcerated for a period after the alleged revocations said nothing conclusive of whether Mr. Rudolph was incarcerated *as a result of* either or both of the 1991 and 1996 convictions, rather than the 2004 conviction.

Once Mr. Rudolph objected to the veracity of this bare, questionable information—clearly calling its reliability into question for specific, well-founded reasons—the government did nothing. In fact, the government did not even disagree with the apparent flaws pointed out by counsel and which were clear on the face of the information provided in the PSR. ROA.160. Nor did the government explain exactly where that "peculiar" information came from. ROA.160, 161. Certainly, the government did not provide—as is standard when convictions are disputed—documentation proving the necessary details of the 1996 offense in order to carry its burden of proof. Instead, the prosecutor spoke in general terms about what documentation the government *usually* uses to deduce the details of prior convictions, "assuming" what documents likely served the basis of the probation officer's conclusions. *See* ROA.160.

In other words, the government failed to provide any proof whatsoever that the sentence for the 1996 conviction had in fact continued beyond its logical endpoint, much less proof sufficient to overcome the facial invalidity of the information by a preponderance of the evidence. Moreover, even if the questionable information in the PSR were assumed to be true, the information itself could not actually carry the day. No sentencing information was provided for the revocations listed, so the district court could not conclude—or, at the very least, could not do so with the required level of certainty—whether the 1996 conviction actually "resulted in [Mr. Rudolph] being incarcerated during any part of [the] fifteen-year period" leading up to the commencement of the instant offense, as required. § 4A1.2(e)(1).

The district court could not find for the government under these circumstances, because the record did not contain sufficiently reliable and complete information to support the government's position. That misstep was rooted in legal error. The district court appeared to believe—erroneously—that even though the defendant had raised a specific, logical, and well-founded challenge to the veracity of unsupported information in the PSR, the government *still* had no obligation to prove

the veracity of that information with any actual evidence or to any minimal level of reliability, going so far as to accept evidence the court itself deemed "peculiar." ROA.161. In other words, the court assumed it could (or perhaps was required) to simply accept the truth of unsupported and unreliable claims that the government did not even attempt to support.

Contrary to the district court's understanding, it was the government's burden to prove by a preponderance of reliable evidence that Mr. Rudolph served at least some part of his five-year sentence for the 1996 conviction (that, on its face, would have expired in 2001) within the relevant 15-year time period. *See, e.g.*, *United States v. Roberts*, 39 F.3d 10, 13 (1st Cir. 1994) ("It is the government that is seeking to assign the extra criminal history point to Roberts and it therefore carries the burden of showing whatever facts are needed to justify the point."). Bare, unsupported, and "peculiar" claims in the PSR do not so qualify. That is particularly critical when, as here, the record before the court contains confusion, contradiction, ambiguity, or lack of information to make a reliable determination. Certainly, that burden is critical when, as here, the defendant puts forward a specific and well-founded claim

about the information's inaccuracy.

Moreover, while the district court found (based on the conclusory allegations in the PSR alone) that parole on the 1996 conviction had been *revoked*, the court did not find that Mr. Rudolph had been sentenced to imprisonment for that revocation and therefore served a term of incarceration resulting from the conviction within the relevant 15 year period, as required. To the contrary, the district court suggested that revocation within the period was enough, regardless of the sentence imposed. *See* ROA.161 ("I am going to base it upon the record that I have before me which is that he was, indeed, on parole, he was revoked, and I think the guidelines are clear that as long as that's within the 15 years, that would create the career offender status."). Of course, the PSR was silent on the issue of any sentence imposed as well. Thus, the district *could not* make the required finding, because there was no evidence in the PSR or elsewhere to reliably come to that necessary conclusion. That was legal error was well.[4]

Unsurprisingly, this Court has reversed in analogous contexts

---

[4] *See, e.g.*, *United States v. Conner*, 537 F.3d 480, 491-92 (5th Cir. 2008) ("[T]he district court's speculation as to the existence of these facts was an insufficient basis to enhance Conner's sentence. '[A] finding under the Guidelines must be based on reliable information and a preponderance of the evidence[.]'" (quoting U.S.S.G. § 6A1.3)).

where there was not in the record sufficiently reliable evidence to support an upward adjustment in the Guidelines, particularly where the district court failed to adequately resolve apparent inconsistencies or reasonable objections to information that appeared questionable on its face. For example, in *United States v. Herrera-Solorzano*, this Court reversed where the record contained inconsistencies with respect to the sentence received for a prior conviction. As in this case, the record regarding the disputed conviction in that case was "inconsistent on its face," purporting to reflect a sentence that appeared not to make sense. 114 F.3d 48, 50 (5th Cir. 1997). The Court concluded:

> From the language of the sentence alone *it is not possible to discern with the required certainty* whether the state court intended to assess a term of imprisonment and suspend imposition thereof, or to place Altamirana directly on probation. The district court erred in failing to put the government to its burden of proving, by a preponderance of the evidence, that Altamirana indeed was sentenced to a prison term of at least five years.

*Id.* (emphasis added).

Similarly, in *United States v. Floyd*, this Court observed the critical minimum requirements applicable to the reliability of information upon which a district court may base a criminal history determination. 343 F.3d at 372-73. The Court explained:

> As a general rule, information in the pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable. This rule, however, is not without its limits. The district court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. As we have explained, there must be an acceptable evidential basis for the court's factfindings at the sentencing hearing.

*Id.* (internal citations and quotation marks omitted) In that case, the Court determined that the district court erred by relying on unsworn statements of the probation offer to prove a prior conviction, without "any supporting documentation evidencing" the conviction. *Id.* at 373. Thus, this Court concluded that the district court erred in finding that the defendant had that prior conviction. *Id.*

Other circuits have done the same. Indeed, the Eighth Circuit addressed a near identical situation in *United States v. Covington*, 133 F.3d 639 (8th Cir. 1998). There, the PSR claimed that, although the defendant was released from his term of imprisonment for a predicate burglary conviction prior to the relevant 15-year period, documents referencing a "parole violation" suggested his parole was later revoked. *Id.* at 642-43. The defendant objected, arguing that, although his parole

27

was revoked, the sentence he subsequently served in prison was for new convictions, rather than the parole violation. *Id.* at 643. "Despite these objections," the court observed, "the government did not introduce any evidence of any sentence ever being imposed on [the defendant] for the burglary parole violation." *Id.* Nonetheless, "[t]he district court found that [the defendant] was imprisoned for the burglary recommitment after June 1981, and sentenced [him] as a career offender." *Id.*

The Eighth Circuit easily concluded that the district court had committed reversible error and remanded for re-sentencing, explaining:

> In this case, no evidence was introduced to confirm that Covington was imprisoned for burglary during the relevant period rather than for the firearm offenses. The conclusion of the presentence report that Covington was imprisoned until October 1982 did not provide the court with the required preponderance of evidence that Covington was imprisoned for burglary, rather than for the firearm offenses, after his return to custody in December 1979.

*Id.*[5]

---

[5] *See also United States v. McNeil*, 573 F.3d 479, 483 (7th Cir. 2009) ("That the PSR failed to include sufficient information for the district court to make that determination is particularly frustrating given that the Wisconsin Department of Corrections possesses documents that would provide easy answers to these questions. Gathering such information is one of the principal tasks of a probation officer in preparing a PSR."); *United States v. Marks*, 864 F.3d 575, 579 (7th Cir. 2017) ("[T]he government failed to offer sufficient evidence to show as a matter of fact that Marks' parole was revoked on at least one of his 1990s convictions. . . . [T]he district court lacked reliable evidence to answer these questions so as to support application of the career-offender Guideline."); *United States v. Bryant*, 571 F.3d 147, 155 (1st Cir. 2009) ("We hold that it was simply not enough for the district court to have relied on the government's recitation of the sources cited in the PSR

Importantly, in most of these reversal cases—including *Herrera-Solorzano* and *Covington*—the government at least produced *some* underlying documentation to support its argument for an enhancement, though the courts in those cases ultimately deemed that evidence inconclusive or insufficiently reliable. Here, the district court went forward with a harsh enhancement with far less to go on: bare, disputed, and admittedly "peculiar" information contained in the PSR alone, with no supporting documentation. In fact, the government appeared not to have obtained any documentation at all, referencing only theoretically the documentation that is *usually* obtained. ROA.160.

In this case, the government had to prove that Mr. Rudolph (1) somehow still was on parole beyond the full-term of his sentence, (2) that this strangely extended parole term was revoked, and (3) that he

---

without any additional inquiry into the reliability of these sources."); *United States v. Price*, 409 F.3d 436, 445 (D.C. Cir. 2005) ("[I]t is evident that the Government failed to meet its burden of demonstrating that the PSR assertions were based on sufficiently reliable sources. The only sources cited by the probation officer to establish the existence of either conviction were '[d]ocumentation from the District Court for Prince George's County, Maryland' and 'Court documents and criminal history information from the State of Maryland.' As Price correctly points out, it is unclear what sort of 'documents' the probation officer reviewed."); *Sanchez*, 2000 WL 1234344, at *5 ("[T]he government has not met its burden of showing that Sanchez was paroled and then was incarcerated as a result of a later parole violation."); *United States v. Andrade-Aguilar*, 570 F.3d 213, 217 (5th Cir. 2009) ("[T]he Government failed to prove by a 'preponderance of the relevant and sufficiently reliable evidence' that [the defendant's] July conviction was final and thus that his conviction for the November offense qualified for the enhancement imposed." (quoting *Herrera–Solorzano,* 114 F.3d at 50)).

29

was sentenced to a term of imprisonment that caused him to be incarcerated for the 1996 conviction within the applicable time frame. The government failed on all accounts, and the district court erred by imposing the harsh career-offender enhancement as a result. Thus, the sentence must be vacated, with instruction for the district court to re-calculate the proper Guidelines range without the unsubstantiated career-offender enhancement and without any criminal history points assessed for that 1996 conviction.

## II.    Mr. Rudolph's instant conviction does not qualify as a "controlled substance offense" within the meaning of § 4B1.1.

The above ends the inquiry on the career offender issue. But that determination must be reversed for a second, independent reason: Mr. Rudolph's instant offense of conviction is not a "controlled substance offense" within the Guidelines definition, making § 4B1.1 inapplicable entirely.

This error was not preserved below and therefore must satisfy the requirements of plain error standard of review, meaning, (1) there must be an error; (2) the error must be "clear or obvious"; (3) "the error must have affected the appellant's substantial rights"; and (4) this court must

decide in its discretion to correct the error because it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009). This specific issue is currently pending before this Court in a petition for rehearing en banc and, therefore, Mr. Rudolph's claim depends on the full Court's resolution of that case. *See Johnson v. United States,* 520 U.S. 461, 468 (1997) (holding that an error is plain based on the law at the time of the resolution of the appeal).

Section 4B1.2(b) defines the term "controlled substance offense" to "mean" a federal or state "offense," punishable as a felony, that:

> prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

By its terms, that definition does not cover "inchoate" versions of the listed offenses, like attempts and conspiracies, and thus does not encompass Mr. Rudolph's instant conviction, a narcotics conspiracy. The Sentencing Commission's commentary to § 4B1.2, however, states that, for "purposes of th[at] guideline," the terms crime of violence and

controlled substance offense "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2, comment. (n.1). Necessarily relying on that commentary, the PSR classified Mr. Rudolph's conspiracy conviction as a qualifying career-offender offense.

That was error under the law of multiple circuits, which have held that § 4B1.2's inchoate-offense commentary expands, rather than interprets, the Guideline's unambiguous text, and therefore "deserves no deference."[6] That widely-held view is well-supported by the Supreme Court's 2019 decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), which clarified the doctrine of judicial deference to agency rule interpretations in all its applications—including the Guidelines commentary.

Previously—in *Stinson v. United States*, 508 U.S. 36 (1993)—the Supreme Court had held that the Guidelines "are the equivalent of legislative rules adopted by federal agencies," and that the Commission's official commentary to an individual Guideline "is akin to an agency's interpretation of its own legislative rules." *Id.* at 45. That is to say: the

---

[6] *See United States v. Campbell*, 22 F.4th 438, 443-47 (4th Cir. 2022); *United States v. Nasir*, 17 F.4th 459, 470-72 (3d Cir. 2021); *United States v. Havis*, 927 F.3d 382, 384-87 (6th Cir. 2019) (en banc); *United States v. Winstead*, 890 F.3d 1082, 1089-92 (D.C. Cir. 2018).

commentary is "controlling" only to the extent to which it satisfies the standard for triggering judicial deference (commonly termed *Seminole Rock/Auer* deference) to agency rule constructions. *Id*. At the time, that articulated standard mandated deference so long as the agency's interpretation (*e.g.*, the Sentencing Commission's commentary) was not "plainly erroneous or inconsistent with the regulation" (*e.g.*, the Guideline). *Id.*

*Kisor* represents the Supreme Court's latest explication of what it takes for an agency interpretation to command *Seminole Rock/Auer* deference. *Kisor* "clarified that *Seminole Rock/Auer* deference does not apply 'unless the regulation is genuinely ambiguous'"—a conclusion the court may reach only after having exhausted "'all the "traditional tools" of construction.'" *United States v. Vargas*, 35 F.4th 936, 939 (5th Cir. 2022) (quoting *Kisor*, 139 S. Ct. at 2415). As Chief Justice Roberts noted in explaining his concurring vote, the requirement that "[t]he underlying regulation must be genuinely ambiguous" represents the first "prerequisite[] for" satisfying the revamped *Seminole Rock/Auer* deference standard. *Kisor*, 139 S. Ct. at 2419 (Roberts, C.J., concurring in relevant part).

From there, *Kisor*'s applicability to the Guidelines commentary logically follows. If *Stinson* requires courts to apply *Seminole Rock/Auer* deference to the commentary (as it does), and if *Kisor* limited *Seminole Rock/Auer* deference to agency interpretations of genuinely ambiguous regulations (as it did), then courts may not defer to Guideline commentary without first finding genuine ambiguity in the corresponding Guideline's text. Thus, as multiple circuits now have recognized, *Kisor* fatally undermined the rationale for deferring to commentary where, as here, that commentary purports to expand the substantive scope of the relevant Guideline, rather than clarifying legitimate ambiguity in the text itself.

On May 21, 2022—in *United States v. Vargas*—this Court addressed the inchoate-offense application note issue for the first time, reluctantly concluding that it was bound to follow *United States v. Lightbourn*, 115 F.3d 291 (5th Cir. 1997), a case the panel interpreted as holding, albeit "impli[citly]," that Section 4B1.2's inchoate-offense commentary is entitled to deference under the standard articulated in *Stinson*. 35 F.4th at 939-41. In doing so though, the panel highlighted that precedent's apparent incongruity with *Kisor*, acknowledging that

"*Kisor* cabined the scope" of the *Stinson* standard. *Id.* at 940. Ultimately, while expressing inclination toward the view of the other circuits to have addressed the issue, the panel nevertheless held that *Kisor* fell short of unequivocally abrogating *Lightbourn* and consequently affirmed. The Court advised: "If we were writing on a blank slate, we might well agree with [petitioner]'s argument that *Kisor* changed *Stinson*'s calculus regarding the deference owed to the Guidelines commentary." *Id.*

Notably, the *Vargas* panel was not the first panel of this Court to express this very sentiment. *See United States v. Goodin*, 835 F. App'x 771, 782 n.1 (5th Cir. 2021) (unpublished) (noting that, had the issue been dispositive in that case "and we were not constrained by *Lightbourn*, our panel would be inclined to agree with the Third Circuit" that *Kisor* applies to the commentary and precludes deference to the application note expanding Section 4B1.2(b) to inchoate offenses (citing *Nasir*, 982 F.3d at 159-60 (3d Cir. 2020) (en banc)). Indeed, even the government has represented to the Supreme Court that, in its view, "*Kisor* sets forth the authoritative standards for determining whether particular commentary is entitled to deference." Brief in Opposition to Certiorari at 15, *Tabb v. United States*, 141 S. Ct. 2793 (2021) (No. 20-579). In *Vargas*, the

government did not contradict that position, instead resting on the contention that, despite *Kisor*'s relevance to the Guidelines commentary, the rule of orderliness compelled adherence to *Lightbourn* absent intervention from the en banc Court. *See United States v. Vargas*, No. 21-20140, Gov't Br. at 12-22 (Sept. 29, 2021); Oral Argument at 17:31-18:07 (Mar. 8, 2022).

Unsurprisingly, the defendant in *Vargas* promptly filed a petition for rehearing en banc, raising the *Kisor* issue for the full Court's consideration. *Vargas*, No. 21-20140, Def. Pet. for Reh'g (Jun. 23, 2022). On May 12, 2022, this Court called for a response from the government, which is currently due July 22, 2022.

It is true that, at the time of the proceedings below, this Court had not yet directly ruled on this question all. However, whether an error is plain is based on the law at the time of the appeal. *Johnson,* 520 U.S. at 468. This question currently is pending before this Court and, if resolved in Mr. Rudolph's favor, would render the error raised herein clear and obvious at the time of Mr. Rudolph's appeal. Accordingly, the career-offender issue in Mr. Rudolph's case is inextricably tied to the resolution of that identical issue *Vargas*. If that issue is resolved in Mr. Rudolph's

(and Mr. Vargas's) favor—thus bringing this Court in harmony with the view of its sister circuits—the first two requirements of the plain error standard will be satisfied.

No doubt, the third and fourth prongs of the plain error standard are satisfied in this case as well. To show that an error affected his substantial rights, a defendant must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (citation and alternation omitted). Here, absent the career offender enhancement, Mr. Rudolph's Guidelines range would have been, at the very least, nearly four and a half years lower, with the bottom of the Guidelines range dropping from 262 months to 210 months. However, the range likely would be significantly lower were the district court to correct numerous other errors raised by counsel, including Mr. Rudolph's erroneous criminal history and various enhancement errors that the career-offender enhancement rendered moot.

Accordingly, this case falls squarely under the rule announced in *Molina-Martinez*:

> [A] defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable

probability that the district court would have imposed a
different sentence under the correct range. That probability is
all that is needed to establish an effect on substantial rights
for purposes of obtaining relief under Rule 52(b).

*Molina-Martinez v. United States*, 578 U.S. 189, 204 (2016). Thus, the

third requirement of plain-error easily is met.

When the first three requirements of plain error are established,

"the court of appeals should exercise its discretion to correct [a] forfeited

error if the error seriously affects the fairness, integrity or public

reputation of judicial proceedings." *Molina–Martinez,* 136 S. Ct. at 1343

(internal quotation marks omitted). The Supreme Court repeatedly has

directed that an error with the potential of imposing additional jail time

on a prisoner is precisely the type of error that reviewing courts should

correct, explaining: "'[A]ny amount of actual jail time' is significant and

'ha[s] exceptionally severe consequences for the incarcerated individual

[and] for society which bears the direct and indirect costs of

incarceration[.]'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907

(2018) (quoting *Glover v. United States,* 531 U.S. 198, 203 (2001), and

*United States v. Jenkins,* 854 F.3d 181, 192 (2d Cir. 2017)). "The

possibility of additional jail time thus warrants serious consideration in

a determination whether to exercise discretion under Rule 52(b). It is

crucial in maintaining public perception of fairness and integrity in the justice system that courts exhibit regard for fundamental rights and respect for prisoners as people." *Id.* (internal quotation marks omitted). Accordingly, this Court should exercise its discretion to correct this impactful error.

### III. This Court should remand to the district court for resentencing and to address various unresolved objections.

There were numerous factual and legal objections lodged by defense counsel below that became unnecessary to resolve in light of Mr. Rudolph's career-offender status. *See* ROA.242-65. Because the district court did not make all of the many, necessary factual and legal findings to resolve those disputes, this Court should decline to reach these issues now and simply remand with instruction for the district court to re-calculate the Sentencing Guidelines range without the erroneous career-offender enhancement. That would properly allow the district court to make the necessary factual and legal determinations in the first instance. Out of an abundance of caution, though, Mr. Rudolph re-raises those objections on appeal as well, though they are unnecessary for this Court to reach at this time. These errors all are preserved.

Accordingly, all legal issues are reviewed de novo and all factual determinations for clear error. *See, e.g.*, *United States v. Castelo-Palma*, 30 F.4th 284, 286 (5th Cir. 2022) ("This court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error.").

*First*, as counsel explained below, the probation officer erroneously calculated Mr. Rudolph's drug quantity. Most glaringly, probation officer assumed that Mr. Rudolph must be held accountable for *both* powder *and* crack cocaine simply because both drugs were alleged in the indictment. In other words, the probation officer appeared to believe that Mr. Rudolph's admission of guilt to Count 1 necessary required his admission to the conspiracy's full drug amount. *See* ROA.246. That is incorrect. As the district court rightly informed Mr. Rudolph at his rearraingment, the elements of the offense required only that he be accountable for one of the drug types and amounts listed in the indictment, not all of them.[7] Thus, his guilty plea did not somehow

---

[7] *See* ROA.346 (advising that, to be convicted of Count 1, the government would have had to prove that (1) Mr. Rudolph knowingly and intentionally distributed a controlled substance, (2) "that the substance was in fact cocaine hydrochloride *or* crack cocaine"; and (3) "that the quantity of the substance was at least 5 kilograms or more of cocaine hydrochloride *or* 280 grams or more of crack cocaine").

automatically prove that all of the narcotics listed therein were attributable to Mr. Rudolph for Guidelines purposes. To the contrary, the government specifically agreed that only the powder cocaine fell within Mr. Rudolph's own conduct and was reasonably foreseeable to him.[8]

The probation officer also assumed that Mr. Rudolph must have known about his co-defendants' separate crack-dealing activity and that they necessarily planned to convert the powder cocaine that he sold them into crack cocaine. ROA.246. As counsel observed, there was no evidence whatsoever suggesting that Mr. Rudolph knew any such thing. ROA.255. Thus, there was no basis to attribute those drugs to him.[9]

*Second*, U.S. Probation erroneously assigned a substantial, 4-point aggravating-role enhancement, at the very, least failing to differentiate between the various levels of accountability and control outlined in the Guidelines and assign a relative increase accordingly. ROA.230, 246-47. Section 3B1.1 provides for 2-, 3-, and 4-level increases to the offense level, depending on whether and to what degree the defendant played an

---

[8] *See* ROA.109 (factual basis).
[9] *See, e.g.*, U.S.S.G. § 1B1.3(a)(1), (a)(2) (defining the scope of relevant conduct as all acts committed by the defendant and, in the case of a jointly undertaken criminal activity all acts by others that were (1) within the scope of the jointly undertaken criminal activity, (2) in furtherance of that criminal activity, and (3) reasonably foreseeable in connection with that criminal activity).

aggravating role in the offense, as follows:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

§ 3B1.1. As with any enhancement, the government bears the burden of proving by a preponderance of reliable evidence that the defendant should receive an aggravating role adjustment.[10]

Contrary to § 3B1.1's plain text, the Probation Officer appeared to assume that anyone deemed an "organizer, leader, manager, *or* supervisor" (and who is involved in a five-person-or-more-conspiracy) automatically received the highest 4-point increase. *See* ROA.246 ("Under USSG § 3B1(c), if the defendant was an organizer, leader, *manager, or supervisor* in any criminal activity that involved five or more participants or was otherwise extensive, increase by four levels."(emphasis added)). But more was required to be eligible for the

---

[10] *See, e.g.*, *United States v. Lora-Andres*, 844 F.3d 781, 785 (8th Cir. 2016) ("The government bears the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted").

highest possible enhancement, rather than (at most) the lower 3-point enhancement for managers and supervisors. And to make Mr. Rudolph eligible at all, there had to be sufficiently reliable information proving by a preponderance that Mr. Rudolph satisfied the various factors listed in the Guidelines commentary for applying and then parsing among the various roles. To the extent this Court assumes that the district court adopted the probation officer's conclusions, more was required both legally and factually for the harshest 4-point enhancement to apply.

*Third*, and finally, U.S. Probation erroneously assigned six extra criminal history points. As discussed above, there was insufficient evidence to show both that Mr. Rudolph's term of parole for the 1996 conviction was revoked *and* that he was sentenced to a term of imprisonment for that revocation, bringing his imprisonment term into the relevant 15-year range. The same reliability issues apply to the 1991 manslaughter conviction. Moreover, although the PSR showed that Mr. Rudolph was *imprisoned* during that time period, it did not show that his imprisonment was attributable to parole revocations for either or both of the 1996 or 1991 convictions. Mr. Rudolph was imprisoned for the 2004 cocaine conviction at that time, so the mere fact of his incarceration does

not show what revocation sentence he received. Thus, there was not sufficiently reliable information to support assessing three points each for the 1991 and 1996 convictions and, therefore, Mr. Rudolph properly qualifies for a criminal history category III.

Accordingly, if this Court deems it appropriate to reach these questions in the first instance, it should reverse these erroneous enhancements and criminal-history calculations and remand for resentencing.

## CONCLUSION

Wherefore, for the foregoing reasons and/or those reasons otherwise apparent to this Court, Gene Rudolph respectfully requests that this Court vacate his sentence and remand to the district court for further proceedings, as appropriate.

Respectfully submitted,

s/Celia C. Rhoads
CELIA C. RHOADS
Assistant Federal Public Defender

Office of the Federal Public Defender
Eastern District of Louisiana
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Celia_Rhoads@fd.org

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 15, 2022, the foregoing Appellant's Brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

> Maurice Edwin Landrieu, maurice.landrieu@usdoj.gov,
> Kevin G. Boitmann, kevin.boitmann@usdoj.gov, and
> Diane Hollenshead Copes, diane.copes@usdoj.gov,
> Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users." 5TH CIR. R. 25.2.5.

s/Celia Rhoads
CELIA C. RHOADS
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,481 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3.  This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4.  This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.  This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

s/Celia Rhoads
CELIA C. RHOADS
Assistant Federal Public Defender
Dated: July 15, 2022